All right, Mr. Rush, we understand you were appointed under the Criminal Justice Act to represent the appellant in this case, and the Court appreciates your willingness to accept that assignment, and you may proceed with your argument. Thank you. May it please the Court, Counsel? Your Honors, I'd like to first start by addressing the issue of whether the District Court erred in denying the judgment of acquittal requested by Mr. Little Bird on the aggravated sexual abuse count of SIR, that's count one. The indictment charged that the five elements, actually six elements, that the defendant, an Indian in Indian country, knowingly engaged in and attempted to engage in a sexual act with SIR who was under 12. The statute is slightly different in that element number four says knowingly engages in a sexual act. And what came out of this trial results to docket 77 with the following jury instruction. The crime of aggravated sexual abuse of a child charged in count one for the indictment has four elements, and this is the important part. On or about June 2nd, on or about between June 2nd, 2016 and July 24th, 2016, the defendant voluntarily and intentionally, the word should be knowing there, caused or attempted to cause SIR to engage in a sexual act, that is, the intentional touching, not through the clothing of the genitalia of another person who has not attained the age of 12. Now the problem is here, that's not a crime in the statute books anywhere. What had happened was, is that in drafting that jury instruction, the court combined a couple of things. Instead of doing sexual act and defining it as penetration, however slight, under 246, went with the sexual contact definition, which is the intentional touching of the genitals of another. And additionally, the wording is just completely wrong in that it said that he attempted to cause SIR to engage in a sexual act, which is not correct at all. This had nothing to do with forcing SIR to do a sexual act. And the definition of the sexual act is completely and totally wrong. So what ultimately ended up happening was, is that the jury was given a jury instruction for a crime that simply doesn't exist in the law, and that's under Docket 77. What we do know is that, and I've quoted those in my brief, that United States v. Plenieros, United States v. Dicoteau, sexual act requires penetration, however slight. And SIR came in to testify first through Raymond Webb at Trial Transcript 101 and said it was over the clothing. Then she testified over at 128. The question was asked to her, did the fingers go in between your lips? No. Did the fingers go inside and penetrate your vagina? No. And additionally, in the forensic interview that was conducted in 2017, she again testified that it was over the clothing. So there's simply no basis whatsoever for the charge of aggravated sexual abuse. What you will see is in about 346 of the trial transcript, and I'm going to be Paul Harvey here for a second, this was complete chaos. When we went to settle the instructions, Jay Miller, opposing counsel, on the Friday before trial had a medical problem. He had checked himself into the hospital and the judge had said, nope, you're going forward, get somebody else to do it. He shows up for trial. We begin to go to trial. We get to the last date. At noon, passes out. So when you get to the jury instructions and you see this lengthy recitation of us talking about the jury instructions, what you're missing is, is that Mr. Miller had passed out during the noon hour. Now we're going through and settling these instructions with Troy Morley. The clerk is there. I'm there. Mr. Morley's making things. The clerk actually objects to the attempt and the statute, and it becomes a free-for-all. After we get done doing these jury instructions, and there's no review that's all the way through this, what ends up happening is the jury instructions are read only to realize that they're incorrect. And we go back and reread the jury instructions as to count five because they are incorrect. So there is no settlement process that's in here. Just as the nature of trying to get the case done, the fact that opposing counsel had had this medical problem and it was just complete and total chaos. It doesn't matter because what the, there was some discussion about whether a lesser-included offense of abuse of sexual contact should have been included. And I think maybe that's a possibility, but it wasn't in the decision of the court. Is your position that, that SIR did not testify to touching under the clothes? She did testify. So if we go to, through the testimony on page, I believe it's 150, when she was testifying, she was talking about it being over the clothing. And then I believe at 150 or 128, the discussion is had and opposing counsel asks her, well, was it also under the clothing? And then she says, yes. And that's where the two questions, was there any penetration? And the answer is no to both of those. But you don't, isn't, there is, doesn't sexual act include the touching under the clothing of the genitalia? That's, I know there's some overlap of some of these definitions and it can get kind of confusing, but I thought that in addition to penetration, that that was one of the acts. Under sexual contact, which is the abuse of sexual contact that would be touching under the clothing. But not, not act. It's not under the, under the clothing, the touching of the genitalia? Right. I think Well, wait a minute. Isn't that correct? Isn't Judge Kelley correct that sexual act includes touching of the genitalia? I don't believe it does, but that's just my reading of the statute. All right. Well, I'm just looking at 2246. The term sexual act means the intentional touching, not through clothing, of the genitalia of another person. Okay. Who has not attained an age of 16 with intent, with a certain intent. And I believe that's for 12 to 16. But maybe that's my misreading of that. That statute's kind of confusing. So you're saying that conduct, when perpetrated against someone under 12, no longer counts as a sexual act? I think if you go back to the 1986 revision where these came about, the idea was abuse of sexual contact would be sexual touching of the genitalia. And that the highest crime, the aggravated sexual assault, would be requiring penetration, however slight. And that's my reading of the statute. I would defer to you on your interpretation of it. Well, that's another form of sexual act. Penetration, however slight. Because I understand it. Okay. Aren't there multiple meanings of sexual act? Well, what I have for 2246. Yeah. 2246 sub 2. Is that what you're looking at? Yes. And don't you see A through D, four different sexual act meanings? Well, I would just, I don't know. I'd have to defer to you on that. In my reading of the statute taken together, it was my impression that it required a sexual act and a sexual act was defined as requiring penetration. So, but regardless, I think what it really comes back to is, if you look at the jury instruction that was given, the jury instruction that was given says that he intentionally let me get that because that's important, that he voluntarily and intentionally caused or attempted to cause SIR to engage in a sexual act that is the intentional touching, not through the clothing or the genitalia of another person. So just the way that he's, that the jury instruction is written, implies that instead of knowingly, it has voluntarily and intentionally caused or attempted to cause SIR to engage in a sexual act is completely and totally wrong in that respect. I'd like to go to my next argument, which is that also the judgment of acquittal should have been granted as far as tampering with a witness. On the count five, it requires that there be, the statute says, whoever knowingly, corruptly persuades another person with intent to influence, delay, or prevent the testimony of another person. Here the problem is, is that my client had been told that the girls had recanted the story. He had talked to his attorney and been given specific directions. You need to have them report that to law enforcement. The behavior that he was engaged in was attempting to get the girls to talk to law enforcement. Have they reported it? Have they reported it again? In his mind, he has no way of knowing that that isn't true. And it's logical in the fact that the mother of the children where all of this became is present and on the phone during some of these conversations. So that Arthur Anderson case that I cite says that only persons conscious of wrongdoing can be said to knowingly, corruptly persuade. He's following a very clear directive of his attorney in providing, in requesting that these girls speak to law enforcement. His former counsel was not called as a witness. No. But I don't think there's any dispute because there's telephone calls that were played during court in which we're talking about have the girls reported, have they talked to officer, whatever. We knew the officer that they were supposed to talk to. He's making the request that they speak to that officer. So in his mind, because he doesn't know that that isn't true, it would be improper for him to find this corruptly persuading. Did anybody testify that they indeed told him that, even though it was maybe a lie, maybe not? Yes. His mother testified that she had completely lied to him the entire time. And it was also by implication that the sister, the mother of the children, had also been encouraging this throughout. And when you say encouraging this, did they expressly say, yes, I told him that the girls had recanted? Yes. I will reserve the rest of my time. Okay. You may do so. Mr. Coloner, we'll hear from you. Thank you, Your Honor. May it please the Court, my colleague, Mr. Rush. I'm Kevin Coloner from the U.S. Attorney's Office in South Dakota presenting for the government. I didn't know we were going to have a jury instruction question here, but I'll just talk about that issue very quickly. Voluntarily and intentionally has been held many times to mean essentially the same thing as knowingly. And so I really don't think there's an issue there. I think my time might be best spent here, Your Honors, if I give you a timeline of the abuse that was an issue that was brought up in the briefing. The claim was that the government didn't properly nail down when this abuse occurred, whether it occurred before this girl turned 12 or the timing of it. You seem to be arguing that today. Well, I know. You want to address the point that was raised today about the sexual act? Sure. The Court has it right, of course. The 22462D defines sexual act without any requirement of penetration. It's the intentional touching not through the clothing or the genitalia of another person who has not attained the age of 16 years. In this case, it was 12 years. Why is that? Because we have 2241, the aggravated enhancement charge for a child under 12. That's the reason that it was charged as 12. With an intent to abuse, humiliate, harass, degrade, arouse or gratify the sexual desire of any person. This Court has held several times that penetration is not required for that subsection. The White Bull case, 646 F. 3rd, 1082. D. Coteau, another case, 630 F. 3rd, 1091. And did the victim here or the girl testify that he did touch the genitals, genitalia? Yes. She did. All right. Yeah. And then what was your, you wanted to say something about the age? Well, I just wanted to kind of give a timeline because I think that's, it has to be cobbled together from kind of circumstantial evidence in this case. Because we had a victim, although she was 16 when she testified, she really, you know, dated back some years and she struggled with telling exactly when it happened. So what the government did is they put on a first witness, the probation officer who placed Mr. Littlebird at the residence after he was released from prison. That's at 75 through 76 of the testimony. It was June 6, 2016. Mr. Littlebird testified he thought it was June 5 of 2016. That's at page 262. Then this was all reported to law enforcement, July 25, 2016, reported by the mother in this case. So if there's any question as to whether he was actually living there, the woman owned the house, his mother reports it to law enforcement. No real question that there's an overlap. Testimony from SIR living there along with Mr. Littlebird until he was arrested. So, you know, the government nailed down in a number of different ways when this happened. By the way, SIR herself testified she was living there at the time with chemo and when the incident happened that she was 11. That's page 134 of the transcript. In terms of the testimony about the abuse itself, in this case, I suppose, in a certain sense, it's lucky that the victim was 16 years old and could describe things in some detail. She said it was skin-to-skin touching. She said, he touched my vagina. That's trial transcript, page 123. First over the underwear, then under the underwear. She talked about how he cupped his hand in a C-shape, described it in detail. You want to talk about the corrupt persuasion question? Right. I think the point that's, well, first of all, the jury instruction number 16, to corruptly persuade someone means to persuade or attempt to persuade with consciousness of wrongdoing. That's the model jury instruction. That's what the jury was told here. So there's no question that the jury was told that Mr. Littlebird must have had a consciousness of wrongdoing. Well, they convicted on the count, they found beyond a reasonable doubt, that he sexually abused this child. And now he's trying to get a recantation. So, you know, we're asked, I guess, to consider, well, maybe he didn't know that the recantation was false. Well, the jury found that he had actually abused this child. So we're linking together the reasonable inferences here for the sufficiency of this evidence. Certainly the jury could find that he had a consciousness of wrongdoing as he's asking his mother to get these girls to pony up a recantation statement. The jury found beyond a reasonable doubt that any recantation, essentially, as to SIR, would have been false, right, because they convicted him on that count. Were all of the, were there some phone call recordings that weren't introduced into evidence? Did that become an issue? There was a question about that, and the government, the prosecutor for the government, made it a point to say, I introduce, you know, everything. And I think even questioned Mr. Littleburg, do you know of any calls that I didn't introduce? I thought the implication was that, well, you haven't introduced some earlier phone calls that would give this some background and context, but nothing came of that at trial. Nothing came of that at trial, yeah, yeah. So it appears they were all introduced, at least from the record that we have here. So your theory on corrupt persuasion is just the fact that the jury can infer that he knew that the recantations would be false? Sure. Was enough to make it corrupt? I thought he claimed that his lawyer had told him or something that he needed to have them submit something, and that they had offered to submit it independent of him. So I believe what happens Is it corrupt if a defendant knows that a victim is voluntarily recanting, and he had nothing to do with that, and he wants to take advantage of it, even though he knows it's a false recantation? Isn't he allowed to use that? What he's doing is he's in call after call asking his mother, you know, would you get him to do this, would you get him to do this? And so, you know, in terms of the consciousness of wrongdoing, I think the jury can fairly infer here that he knew any recantation would be false. Now, he's where witnesses recant, and the recantation is false, and the defense attorney calls the witness, and that's not obstruction of justice, is it? Well, it becomes obstruction when the defendant is calling people to persuade those, you know, those victims to pony up the statement that the defendant himself according to the jury's verdict would have known would have been false. There's also part of this was about these stimulus check payments. So that's, you know, kind of intertwined, an offer intertwined with these conversations that he could give, you know, part of the stimulus check. So, I mean, there was argument made there. Was it implied that that would be in exchange for? That was certainly the government's argument, and I think there were reasonable inferences that could be drawn from it. He knew it was recorded jail calls, so we always get these kind of, you know, coded language in calls like that, but it, you know, there are certainly inferences a jury could draw regarding the stimulus payments in these recantation statements, so. Unless there's any further questions, I'll take my seat. Well, thank you for your argument. Thank you. Do you care to make any rebuttal, Mr. Rush? All right, you may proceed. The clearest way that you know that Kimo Littlebird did not have a clue that these stories weren't true was because in his efforts to get his mother to do this and get these girls to talk, he encourages and ends up getting law enforcement to go out and talk to SSW, who then makes a report. We supersede and add another charge. You'd have to be insane to make that kind of recommendation that these people go talk to law enforcement, get charged again, and then continue unless you really believed. And now that SSW charge, he was acquitted of that at trial. So he is honest in his belief that his mother and his sister have told him that they have recanted these stories. And it came about as a result of his sister stealing all of his girlfriend's stuff, and the report came out the next day. So when that same lady is saying, well, now they've recanted their stories, obviously he believes that. He talks to his attorney numerous times. He's encouraged them to contact law enforcement. And that was the charge that the jury was deadlocked on, and we had to do the Allen charge or tell them to go back and reconsider. The last thing that I want to do is I want you to really, and I know this is a fairly new issue, is to spend some time on that jury instruction because what it says is that. Counsel. Go ahead. No, no. That doesn't matter. Boy, coming into this case, I had no idea there was going to be a tax on a jury issue. And I went back and read it again while you were arguing. I had the same reaction. You can't just show up at oral argument on an issue that wasn't even in the briefs. You know, when we were going through these jury instructions, I've never quite been through anything like that in my life. And the clerk was changing. Why didn't you raise it in your brief then if it's such a good issue? Because I didn't see it until this morning. Ah. Appreciate your honesty. Yeah, I guess so. And when I'm looking through the transcript, you know, the reading of the instructions is not reported on the transcript. And then when I'm looking at these jury instructions, and I've got piles of submitted ones, the clerk was changing. Whatever is changing, Troy Morley is making these things. It's complete and total chaos when you look at it. But then this morning when I'm looking at this, I'm going, well, that isn't even the right thing. That's not even a crime. He corruptly, he voluntarily, intentionally caused or attempted to cause SIR to engage in a sexual act. It has nothing to do with what was the charge, and it's so far off from the law that I just don't think we can leave it stand. Thank you. All right. The case is submitted and the court will file a decision in due course. Thank you to both counsel. You are excused. Thank you. Please call the next case for argument. The sixth case for argument is United States v. Garrett Waters.